# Richmond.

## WOOD v. AMERICAN NATIONAL BANK.

### January 23, 1902.

1. PLEADING—*Damages—General and Special—How Pleaded—Exemplary Damages—Bill of Particulars.*—Under the common-law system of pleading, damages which do not necessarily flow from the act or omission complained of must be specially pleaded, but damages which are the necessary and proximate result of such act or omission are termed general, and are legally imported, and may be recovered, although not specially claimed in the declaration. If the facts averred in the declaration show that the plaintiff is entitled to recover exemplary damages, they need not be claimed *eo nomine.* If a more specific statement of the elements of damage be desired, it may be demanded under the provisions of section 3249 of the Code.

2. PLEADING—*Certainty.*—The facts which constitute the cause of action should be set forth in the pleadings with sufficient certainty to be understood by the party who is to answer them, by the jury who are to ascertain the truth of the allegations, and by the court which is to render judgment.

3. PLEADING—*Repeated Injuries—How Pleaded—Exemplary Damages.*—An allegation in a declaration that certain acts and omissions which constitute the cause of action were "wrongs repeatedly committed against the plaintiff" is a sufficient charge that they were willful and wanton, and will warrant a finding of exemplary damages.

4. BANKS—*Failure to Pay Check—Measure of Damages.*—The failure of a bank to pay checks of a depositor properly drawn on funds on deposit, and duly presented, gives the depositor a right of action against the bank, and if such failure is willful and malicious, or is due to negligence so gross as to evince a culpable indifference to consequences and the rights of the depositor, he has the right to recover exemplary damages. But where the failure is due to the mistake of the book-keeper, for which the president promptly apologized and offered to correct the error as far as possible, and there is an absence of any fraud, malice, oppression or other special cir-

### Opinion.

cumstances of aggravation the recovery will be limited to the actual damages sustained.

5. EVIDENCE—*Motive—Measure of Damages.*—Where the measure of recovery in action of tort is determined by the motive with which an act was done, all circumstances tending to show the presence or absence of such motive are admissible in evidence.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered January 14, 1901, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*J. Kent Rawley* and *J. Preston Carson,* for the plaintiff in error.

*O'Ferrall & Regester* and *Jas. Mullen,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is an action of trespass on the case brought by plaintiff in error, C. B. Wood, against defendant in error, the American National Bank.

The averments of the declaration necessary to be stated are: That, at the time of the commission of the grievances complained of, the plaintiff was a commission merchant, or broker, in the city of Richmond, of good standing and credit; that between December 15, 1899, and March 20, 1900, he was a depositor, and kept a banking account with the defendant; that on March 16, 17, 18, 19 and 20, 1900, he had on deposit in the bank a sum exceeding $5.92, subject to check; that on March 16, 1900, he drew a check on said bank for $5.92, payable to the order of Warner Moore & Co., a firm dealing largely in grain and like commodities, in the city, with which the plaintiff did a large and profitable business; that his credit and general

standing with that firm was of great value to the plaintiff; that the check in question was properly endorsed, and on March 17, 1900, was placed in the First National Bank of the city of Richmond; that it passed regularly through the clearing house of the city, and was, on March 19, 1900, twice duly presented to the defendant bank for payment, which was refused; that on March 20, 1900, the check was again duly presented and payment again refused.

Thereupon, Warner Moore & Co. informed the plaintiff that his check had been dishonored, and he drew another check in their favor for $5.92 on the defendant bank, which was also presented on the day last named, and dishonored; that plaintiff then informed the bank that he had funds on deposit more than sufficient to meet the check, and, upon investigation, his statement was ascertained to be correct, and the check was paid. The declaration concludes as follows:

"And the said plaintiff avers that, by reason of the negligence and errors of said bank, and of the wrongs thus repeatedly committed against him as aforesaid by the said defendant bank, he has been greatly injured in his good name, standing, and credit, and has suffered great loss by reason of the injuries so caused to his good name and reputation, and in his business as a trader and broker, and his standing in the community has been greatly lowered to his damage $2,000." To this declaration, the defendant pleaded not guilty.

There were two trials of the case. At the first trial, there was a verdict for the plaintiff for $725 damages, which, on the motion of the defendant, and, over the objection of the plaintiff, the court set aside.

At the second trial, the jury returned a verdict for the plaintiff, and assessed his damages at $50. The plaintiff submitted a motion to set aside that verdict as contrary to the law and evidence, and for misdirection of the jury by the court, which motion the court overruled, and rendered judgment on the verdict. The case is here upon a writ of error to that judgment.

The practice in this State, now carried into statute, is that when there have been two trials of an action at law, and the verdict of the jury on the first trial has been set aside by the trial court, and proper exception taken, and the evidence has been certified, for this court to examine the proceedings and evidence on the first trial, and if it discovers that the court erred in setting aside the verdict on that trial, it will annul all subsequent proceedings and render judgment thereon.   Acts 1891-2, p. 962; *Jones, Infant, by &c.* v. *O. D. C. M.*, 82 Va. 140, 149; *Chapman* v. *Va. R. E. Co.*, 96 Va. 177; *Patteson, Trustee,* v. *C. & O. Rwy. Co.*, 94 Va. 16.

After the court had overruled the defendant's motion to set aside the first verdict, as contrary to the law and evidence, the defendant submitted another motion to set the verdict aside on the ground that the fourth instruction misdirected the jury as to the law applicable to the case; the contention on that motion being, that the averments of the declaration did not set out a case which would support an instruction allowing exemplary damages.   That motion the court sustained.

Under the rule of practice adverted to, the first enquiry involves the correctness of the ruling of the trial court upon these motions.   For convenience they will be considered in their inverse order.

And first, as to the sufficiency of the declaration to warrant a recovery of exemplary damages.   In jurisdictions where the common-law system of pleading prevails, the doctrine is that special damages, that is to say, such damages as do not necessarily flow from the act or omission complained of, must be *specially laid* in the declaration, or they cannot be recovered.   *Lee* v. *Hill*, 84 Va. 919.

On the other hand, when the damages are the natural and proximate result of the act or default complained of, they are *general*, are *legally imported* from such act or default, and need not be *specially pleaded*.

The reason for the distinction is obvious:   In the former case,

a distinct averment is essential to put a defendant on notice of the nature of the demand which he is required to meet, while in the latter, a recital of the act or default is sufficient for that purpose.

It is a logical sequence from the foregoing distinction, that where a declaration alleges a state of facts, which, if proved, would, under the law, entitle a plaintiff to a verdict for exemplary damages, such damages may be recovered, although not claimed *eo nomine* in the declaration. 3 Sedg. on Dam., sec. 1263; 1 Suth. on Dam. (2d ed.), secs. 418, 422, n. 5; 2 Thomp. on Neg., sec. 26; 2 Add. on Torts., sec. 1392, n.; 1 Chitty Pl. 395-6; *Southern Express Co.* v. *Brown,* 67 Miss. 260; *A. & G. S. R. Co.* v. *Arnold,* 84 Ala. 159; *Wilkinson* v. *Searcy,* 76 Ala. 176; *Panton* v. *Holland,* 17 John. 92; *Taylor* v. *Holman,* 45 Mo. 371; *Schofield* v. *Forrers,* 46 Penn. St., 438; *Gustafson* v. *Wind,* 62 Iowa, 284; *Savannah R. Co.* v. *Holland,* 82 Ga. 259.

In the case of *B. & O. R. Co.* v. *Sherman,* 30 Gratt. 602, a declaration charging negligence and setting out the cause of action in general terms was sustained. The principles there enunciated have been since followed in a number of cases. The trend of the more recent decisions, however, has been in the direction of greater particularity of averment—a practice to be commended, as tending to prevent surprise, by fully informing a defendant of the charge which he is required to meet. *Eckles* v. *N. & W. R. Co.,* 96 Va. 71; *Dingee* v. *Unrue,* 98 Va. 247.

In some of the States of the Union, by legislative enactment, exemplary damages are put on the same footing with special damages, and cannot be recovered unless specially claimed in the declaration. As was remarked by Stone, C. J., in the case of *A. & G. S. R. Co.* v. *Arnold, supra,* if the question were an open one, there is much in the argument in favor of such a requirement. However, much of the mischief, which might result from the laxity of pleading permissible in actions for negligence,

can be obviated by resort to the provisions of section 3249 of the Code, which entitles litigants to demand that a statement be filed of the particulars of the claim, or of the ground of defence, when not sufficiently described in the notice, declaration or other pleading. *City of Richmond* v. *Leaker*, 99 Va. 1.

In discussing the subject as to the degree of certainty required in alleging the facts in the declaration, Chitty observes: "The principal rule, as to the mode of stating the facts, is, that they must be set forth with *certainty*, by which term is signified, a clear and distinct statement of the facts which constitute the cause of action . . . . . . so that they may be understood by the party who is to answer them, by the jury who are to ascertain the truth of the allegations, and by the court which is to give judgment." 1 Chit. Pl. (9th Am. ed.), pp. 232, 233, 254.

The declaration in the case under consideration is in literal compliance with the rule thus succinctly stated. The facts relied on are set out in detail, and with a clearness and precision which could not have been misunderstood by the defendant. It would have been better pleading to have charged that the acts and omissions complained of were willful or wanton, but they were characterized by equivalent expression, as "wrongs repeatedly committed against the plaintiff," and that was sufficient.

"Where it is material to show an undue motive or intent, it is seldom necessary in a civil action to state it in *terms*, it is sufficient if it be substantially shown.

"Thus, in an action against a returning officer for refusing a vote at an election, though a bad intent is necessary to the support of the action, yet the word *wrongfully* intending to deprive the plaintiff, &c., is sufficiently indicative of a *malicious* intent." 1 Chit. Pl. 390.

The relation between a bank and a depositor is that of debtor

and creditor. The bank in consideration of the deposit or loan, impliedly agrees with the depositor that whenever demand is made by the presentation of a genuine check, properly endorsed, in the hands of a person entitled to receive the amount, the check will be honored to the extent of the funds on deposit. Whenever a bank fails to fulfill this agreement with a depositor, by honoring his check when duly presented, a right of action at once accrues. *Robinson* v. *Gardner,* 18 Gratt. 509; *Nolting* v. *Nat'l Bank of Va.,* 99 Va. 54; *Bank of Republic* v. *Millard,* 10 Wall. (U. S.) 152, 155; *Wray* v. *Tuskegee Ins. Co.,* 34 Ala. 58; *Carr* v. *Nat. Security Bank,* 107 Mass. 45; *Citizens' Nat. Bank* v. *Importers, &c.,* 119 N. Y. 195.

If the dishonor of a depositor's check is willful and malicious, a right to recover exemplary damages would accrue. *Birchall* v. *Third Nat'l Bank,* 19 Cent. L. J. 390.

And if the negligence of a bank is so gross as to evince a culpable indifference to consequences, and the rights of the plaintiff, it would be sufficient ground for the allowance of such damages. 1 Sedg. Dam., sec. 368.

In *Rollin* v. *Stewart,* 14 C. B. 595, a verdict of £500 damages was returned against a bank for dishonoring a check for a comparatively small amount. The court intimated that it was a very large sum, but did not disturb the verdict, and the matter was finally adjusted by agreement of parties at £200. See also *Schaffner* v. *Ehrman,* 15 L. R. A. 134.

In the case in judgment, the averments of the declaration, *if true,* evince such gross negligence, and such a disregard of the bank's duty and the plaintiff's rights, as might have warranted the jury in finding that it was acting in bad faith and oppressively and tortiously, and, in their discretion, in awarding exemplary damages against it. The ground upon which the trial court based its action in setting aside the verdict at the first trial cannot, therefore, be sustained.

(2) The next enquiry is as to the sufficiency of the evidence to justify the verdict of the jury.

The testimony of the plaintiff on the first trial was that for a number of years he had been a grain broker and buyer in the city of Richmond; that on December 15, 1899, he opened an account with the defendant, and on March 16, 1900, made his last deposit, amounting to $53, $35 of which was cash, and $18, a check on a bank in Henderson, Kentucky; that, on the evening of March 16, he drew a check on the defendant bank for $5.92, payable to Warner Moore & Co.; that on March 20, the agent of that company returned the check, and demanded to know why plaintiff had given him a check on a bank when there were no funds to meet it; that plaintiff stated there must be some mistake, and went immediately to the bank and interviewed the book-keeper, who informed him that there was over $50 to his credit. Thereupon plaintiff asked why he had turned down his check to Warner Moore & Co. for $5.92; that the book-keeper denied having turned down his check, and stated that he had never seen it, and knew nothing about it; that plaintiff then gave a new check for the same amount, and he and the agent of Warner Moore & Co. went to the bank together, when the agent presented the check, while he stood back; that the teller smiled, shook his head, and returned the check to the agent; that the plaintiff then came forward and the teller told him he had no funds with which to pay the check; that after some conversation, the teller went back and saw the book-keeper, and on his return stated that it was a mistake, and that they would pay the check, which was done.

That he could not say how much he had been damaged by having this dishonored check going through the bank, in which all his business was conducted, and through the clearing-house; that a number of persons had talked with him about it, and, in paying off accounts, some of them had asked him in a joking way if he had money to meet them; that the defendant bank had never turned down one of his checks before, but had, on

several occasions, allowed him to overdraw his account, and had been always liberal in their conduct towards him; that he sometimes mailed checks out of town for larger amounts than he had in bank, knowing or feeling sure that he would have enough money in bank to meet them when presented; that this is called "kiting," and was done by the trade in general; that he had sufficient funds in bank to meet this check when it was drawn and afterwards presented for payment; that he had before that time had a check for $100 turned down by another bank; that he only had $60 or $70 on deposit at the time, but made it good at once; that this was done in a rush of business when he had not time to post his check-book; that he had had a disagreement with the Security Bank, and they did not desire his account, but that he still had a balance to his credit with them; that he had drawn several checks on the defendant bank when he did not have funds to meet them, and the bank paid the overdrafts; that he had done a larger amount of business that month than usual; that he desired to deposit money with the Security Bank after this occurred, but it refused to accept the deposit.

The agent of Warner Moore & Co. corroborated the statement of the plaintiff as to the presentation and dishonoring of the check; but stated that turning down the check had not injured the plaintiff in his estimation; that no one in their office knew of the transaction except himself and the cashier. A number of witnesses vouched for the reputation of the plaintiff, as a man who paid his debts. One witness spoke of the volume of the plaintiff's business, which he stated was unaffected by the bank episode.

O. J. Sands, the president of the defendant bank, was introduced by the plaintttiff. He stated that he did not know the particulars about the presentation and dishonor of the check in question, but knew that it was paid on March 20. He gives a detailed statement of the standing of accounts between his bank

and the plaintiff, the result of which showed that the defendant bank had funds sufficient to meet this check; but the account was complicated by the circumstance that the plaintiff had drawn another check on the fund, which was made up, in part, by a check on a bank in Henderson, Kentucky, from which, at the time, the bank had not heard.

He also stated that plaintiff's "overdraws" had become so frequent, and he had become so careless about making them good, that the bank declined to pay them any longer. He disclaimed all intention on the part of the bank to injure the plaintiff, or his credit—it was desirous of securing depositors rather than driving them off.

On March 21, 1900, he addressed a letter to the attorney for appellant to the effect that it was a mistake to suppose that there was sufficient money to his credit to pay the check in question, and calling attention to the fact that other checks for a larger amount had been presented and declined.

But on March 23, 1900, he wrote plaintiff as follows:

Mr. C. B. WOOD, City:

*Dear Sir,*— Since my letter to J. Kent Rawley, Esq., I have more fully investigated the facts in connection with the refusal by the teller of this bank to honor your check for $5.92 when it was presented on the 19th instant. I find that the book-keeper had overlooked a deposit made by you previously, and had reported to the teller that you did not have funds to meet the check. The book-keeper is a young man of fine business capacity, and this is the only inadvertence upon his part I have known.

The officers of the bank regret very much that the mistake occurred, and are ready to do anything in their power to remove any injurious impressions that may have been made upon the holder of the check, or any other person. They also authorize you to use this letter as you may deem proper. The employees

of a bank, however careful they may be, are liable, like other men, to make mistakes occasionally.

Yours, very respectfully,

O. J. SANDS, President.

It appears from the evidence that the bank was reprehensively negligent in not exercising greater caution to inform itself of the standing of accounts with its customer before refusing to honor his check. It was, therefore, liable for any *actual damage* that may have resulted from its negligence.

But there was no element either of malice, bad faith, oppression, or such willful negligence on its part proved as would have warranted the jury in imposing exemplary damages. On the contrary, while the bank was not free from blame, its friendly relations and prior dealings with the plaintiff and prompt disclaimer of all intention to injure him, repel the imputation of malice or bad faith on their part in refusing to honor his check.

Exemplary damages are allowable only where there is misconduct or malice, or such recklessness or negligence as evinces *a conscious* disregard of the rights of others. But where the act or omission complained of is free from fraud, malice, oppression, or other special motives of aggravation, damages by way of punishment cannot be awarded, and compensatory damages only are permissible. *Peshine* v. *Shepperson,* 17 Gratt. 485; *N. & W. R. R. Co.* v. *Neely,* 91 Va. 539; *Burruss* v. *Hines,* 94 Va. 413, 419.

As the reason for allowing exemplary damages is the supposed evil motive of the bank, all circumstances tending to show that it had no such motive may be proved, to prevent the allowance of such damages; and if it appears that the defendant acted in good faith, it cannot be held liable for exemplary damages. 1 Sedg. Dam., secs. 369, 383.

Subjected to this test, it is apparent that the evidence at the first trial did not warrant a verdict for exemplary damages. So

that, in the result, there was no error in the action of the court in setting aside the first verdict.

But it further appears that, at the second trial, the plaintiff, to maintain the issue on his part, offered to introduce evidence tending to support a claim for exemplary damages; but, the defendant objecting, the court refused to allow the introduction of such evidence, on the ground that the declaration did not set out a case, in which, under the law, exemplary damages could be awarded.

It follows, from what has been said on that subject, that the court error in excluding such evidence, and for that error, the verdict of the jury, on the second trial, must be set aside, and the judgment rendered thereon reversed and annulled, and the case remanded for a new trial to be had in accordance with the views herein expressed.

*Reversed.*