HENRY P. FRIEDMAN V. WILLIAM JORDAN, AN INFANT, ETC.

March 12, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*Herman A. Sacks,* for the plaintiff in error.

*Baird, White & Lanning,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Henry P. Friedman was the defendant in the court below to an action for damages by Jordan, an infant, who sued by his next friend, and a judgment was pronounced against him, for $1,500 upon the verdict of a jury.

Jordan had been working as a delivery boy for Friedman who conducted a grocery store, his wages being $5 per week. On the morning of June 14, 1935, after having made several deliveries, Jordan had collections of $1.25 belonging to Friedman. They had a dispute about a bicycle and Jordan was discharged, but refused to turn the $1.25 over to Friedman because the latter owed him wages of $2.50 which he withheld. Later, on the same day Jordan was employed in the same capacity by another grocery merchant and in making delivery of groceries on a bicycle he and a companion rode by Friedman's store. Friedman ran out of his store and "hollered" at Jordan about the $1.25. He then mounted a bicycle which was standing at the curb and pursued Jordan but the latter pulled away and Friedman returned to his store. About one-half hour later Jordan and his companion were riding on Newport avenue when Friedman was observed driving up from behind in his Buick sedan. When Jordan saw him he

pulled over close to the right curb and proceeded rapidly on his bicycle. Friedman pursued him and was close behind when Jordan turned into Georgia avenue. Friedman also turned into Georgia avenue just five or six feet behind Jordan who was then proceeding on his bicycle as fast as he could on his side of the street. He was overtaken by Friedman, struck by the Buick car and the front wheels ran over both of his legs. When the car was brought to a stop Jordan was partly under it and his shoulder jammed into the curb. The bicycle was also under the car and demolished. Friedman got out of his car and according to the testimony of Jordan shouted, "give me my money," put his hands in Jordan's pockets and looked around under the car. He did not help to extricate Jordan who could not get from under the car until assisted by some bystanders. When Jordan was finally taken from under the car he tried to run but fell to the ground. A bystander offered to take him to the hospital but Friedman said "that's my nigger, I'll take him to the hospital." Friedman told Jordan at this time "that served you right" and "you got what was coming to you."

Jordan was taken to the hospital by a colored man where he remained for two or three hours while the doctors treated and dressed his wounds. He was later taken to his home and remained in bed two weeks and for sometime thereafter was unable to walk without difficulty. For more than six months he was unable to do any work on account of his injuries. At the time of the trial he was still suffering from a sore spot on top of his shoulder which tended to restrict the normal use of his arm.

The defendant testified in direct conflict to what we have narrated but the jury rejected his statement as to how the accident occurred.

The court instructed the jury that if Jordan's injuries resulted from wilfulness and maliciousness on the part of Friedman they could, in addition to awarding compensatory damages, award him punitive damages against

Friedman. Counsel for Friedman complain that the granting of such an instruction was prejudicial error. This is the principal error assigned.

If the conduct of Friedman was wilful or malicious, punitive or exemplary damages could properly be awarded against him. If he intentionally ran down Jordan, or if he ran down Jordan under such circumstances as to evince a reckless disregard for the latter's safety and a willingness to inflict the injury complained of, such conduct would be wilful and would justify an instruction such as that complained of.

Wilful or wanton conduct imparts knowledge and consciousness that injury will result from the act done. The act done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury. Ill will is not a necessary element though it is shown to exist in this case. See 20 R. C. L. pp. 20 and 21.

In *Baker* v. *Carrington,* 138 Va. 22, 120 S. E. 856, this court held that to recover exemplary damages actual malice need not be shown. Whenever the assault is of a wanton nature, manifesting a wilful disregard of the rights of others the party aggrieved is entitled to exemplary damages. The absence of actual malice does not defeat the right to recover such damages. See also, *Borland* v. *Barrett,* 76 Va. 128, 44 Am. Rep. 152.

One witness said "The boy was riding as hard as he could and the car kept coming right on behind him. It looked like the man in the car was chasing him because he got closer and closer * * *." The automobile was running about twenty miles per hour and was only about five or six feet behind Jordan when they turned into Georgia avenue. From this evidence and the other testimony in the case which we need not refer to, we think Friedman was chasing Jordan and wilfully ran him down and injured him. The instruction given was proper under the evidence.

■ The amount of the verdict was not excessive. For his pain and suffering and the duration and extent of his injuries the jury awarded Jordan $1,500. No doubt the jury, in fixing the amount, to some extent at least, was guided by the instruction complained of.

■ The after-discovered evidence now urged does not meet our requirements. If due diligence had been exercised it is quite likely that this evidence could have been produced at the trial. At another trial it would not likely change the result.

We affirm the judgment.

*Affirmed.*