# Doris Martin Booth

### V.

# George Barnitz Robertson

Record No. 861004

November 18, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Gordon, Retired Justice

G. *Carter Greer (Greer, Greer & Furrow*, on brief), for appellant.

J. *Rudy Austin (William O. Tune, Jr.; Thomas H. Miller; Gentry, Locke, Rakes & Moore*, on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

In this personal injury case arising out of an automobile accident, the plaintiff, Doris Martin Booth, sought both compensatory and punitive damages from the defendant, George Barnitz Robertson. The trial court permitted the jury to consider compensatory damages but struck the plaintiff's evidence relating to punitive damages. The jury returned a verdict in favor of the plaintiff for $75,000 in compensatory damages, and the judgment entered on that verdict has become final. The plaintiff has appealed from the adverse action on her claim for punitive damages.

The accident in which the plaintiff sustained her injuries occurred after dark on a rainy evening in late October 1984. Leaving her workplace in Radford around 7:10 p.m., the plaintiff proceeded in a northerly direction on Interstate Highway 81, en route to her home in Vinton.

About 7:50 p.m., the defendant, operating a jeep, drove the wrong way down the exit ramp for northbound traffic at Exit 39 and entered the northbound lanes of Interstate 81 into the path of an approaching tractor-trailer truck. Seeing the defendant's jeep coming toward him, James Hogan, the driver of the truck, blinked his lights and blew "a constant blast" on his air horns. Hogan also turned his vehicle to the right and then to the left in an effort to avoid a collision with the jeep. The defendant finally passed Hogan on the latter's left side and "just kept going . . . at a pretty high rate of speed." At a point approximately four-tenths of a mile south of Exit 39, the defendant collided head-on with the plaintiff.

The defendant was charged with driving under the influence and reckless driving. A certificate of blood analysis showed that after the accident, he had a blood alcohol content of 0.22% by weight by volume.[1] The defendant later pleaded guilty to the charge of driving under the influence.

On appeal, the defendant contends that, in Virginia, punitive damages may be awarded in vehicular accident cases only for malicious conduct and that there has been no showing of malice in this case. The defendant bases this contention on his reading of two of our decisions, *Baker* v. *Marcus*, 201 Va. 905, 114 S.E.2d 617 (1960), and *Essex* v. *Commonwealth*, 228 Va. 273, 322 S.E.2d 216 (1984).

The defendant points out that, in *Baker*, we said: "One who knowingly drives his automobile on the highway under the influence of intoxicants, in violation of statute, is, of course, negligent. It is a wrong, reckless and unlawful thing to do; but it is not necessarily a malicious act." 201 Va. at 910, 114 S.E.2d at 621.

We think the defendant reads this quotation out of context. The statement was made as part of a general discussion on the subject of punitive damages and cannot be read as a holding that punitive damages may be awarded only for malicious conduct. Indeed, earlier in the *Baker* opinion, we noted that " '[punitive] damages are allowable only where there is misconduct or malice, *or such recklessness or negligence as evinces a conscious disregard of the rights of others.*' " 201 Va. at 909, 114 S.E.2d at 621 (quoting *Wood* v. *Amer. Nat. Bank*, 100 Va. 306, 316, 40 S.E. 931, 934 (1902)) (emphasis added).[2]

The defendant next points out that we repeated the *Baker* quotation in *Essex* and then said in a footnote:

Some courts reason that one who deliberately drives a car to a place remote from home for the purpose of drinking, knowing that he will have to drive home under the influence of alcohol, then, after becoming intoxicated, drives recklessly,

---

[1] Code § 18.2-269 establishes a presumption of intoxication from a blood alcohol content of .10% or more by weight by volume.

[2] *Baker* involved a rear-end collision caused by the negligence of a defendant who had been drinking but whose intoxication was considered borderline by the police. We reversed an award of punitive damages, saying there was "nothing to show [the defendant] acted in a spirit of mischief, criminal indifference, or conscious disregard of the rights of others." 201 Va. at 910, 114 S.E.2d at 621.

thereby acts so wantonly, and with such a disregard of human life as to supply an inference of malice . . . . We do not think the premises support the conclusion reached.

228 Va. at 283 n.3, 322 S.E.2d at 221 n.3 (citation omitted).

■ But this footnote cannot be considered as a holding that only malicious conduct warrants an award of punitive damages. *Essex* involved a conviction of second degree murder for death occurring in an automobile accident caused by an intoxicated driver. A showing of malice was essential to the conviction. We merely held that the defendant's intoxication was "irrelevant to the determination of malice." 228 Va. at 283, 322 S.E.2d at 221. Nothing in the opinion suggests there are no grounds other than malice for an award of punitive damages.

The defendant also cites our decision in *Friedman* v. *Jordan*, 166 Va. 65, 184 S.E. 186 (1936). The defendant says *Friedman* is "the paradigm case," representing the only vehicular accident scenario in which an award of punitive damages is justified. The defendant characterizes the evidence in *Friedman* as showing that "a creditor deliberately ran down his debtor, who was on a bicycle, pinned him under the automobile, and then demanded payment of the debt."

■ *Friedman*, however, is not authority for the proposition that only malicious conduct will support an award of punitive damages. Like *Baker*, *Friedman* recognizes that an award of punitive damages may also be based on a showing of willful or wanton conduct which evinces a conscious disregard of the rights of others. 166 Va. at 68, 184 S.E. at 187.[3]

But, the defendant argues, even if willful or wanton conduct will support an award of punitive damages, *Friedman* teaches that such conduct imports "knowledge and consciousness that injury will result from the act done." *Id*. The defendant then asserts there was no proof in this case he "*knew* that he was traveling in the wrong direction on the interstate, that he was *deliberately* bent on destruction and that he *did not care*" (emphasis in original). In the absence of ill will or some other motivation to cause

_____

[3] The defendant also cites *Eubank* v. *Spencer*, 203 Va. 923, 128 S.E.2d 299 (1962), but there the plaintiff had abandoned a claim for punitive damages in the trial court and the defense had admitted liability for ordinary negligence, leaving the amount of compensatory damages as the only issue before the jury. Under those circumstances, we held it was error to admit evidence of that defendant's intoxication.

harm, the defendant says, proof of conscious disregard could have been supplied only if he had stated beforehand that he was going to drive "down the interstate the wrong way [and have] some adventure and excitement tonight."

■ We disagree with the defendant. We think that a conscious disregard of the rights of others may be proved by means other than a defendant's subjective statements. The objective fact that the defendant in this case voluntarily consumed enough intoxicants to produce a reading of 0.22% blood alcohol content, causing him to drive as he did on the night in question, provides sufficient proof of his conscious disregard of the rights of others.

The defendant argues, however, that because of his high state of intoxication, he was "less [able] to be aware of the consequences of what [he was] doing." Indeed, the defendant takes the extreme position that "the drunker [one gets] and then [drives], the less likely [he is] to be liable for punitive damages."

■ We reject this notion. In *Essex*, we said that while intoxication is "irrelevant to the determination of malice," 228 Va. at 283, 322 S.E.2d at 221, it is "relevant to a determination of the degree of the defendant's negligence: whether ordinary, gross, or wanton." *Id.*, 322 S.E.2d at 221-22. We also said that intoxication may "serve to elevate the defendant's conduct to the level of 'negligence so gross, wanton, and culpable as to show a reckless disregard of human life.'" *Id.*, 322 S.E.2d at 222 (quoting *King* v. *Commonwealth*, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977)). While *Essex* and *King* are criminal cases, the quoted observations are no less pertinent in this civil matter.

We think it is clear that negligence which is so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct, will support an award of punitive damages in a personal injury case. We hold that the negligence in the present case rises to the necessary level of wantonness.

■ We do not intend by this decision to indicate a lessening of this Court's general reluctance to allow punitive damages in run-of-the-mill personal injury cases. We merely hold that, upon the egregious set of facts presented in this case, the plaintiff is entitled to have a jury consider her claim for punitive damages.

Accordingly, we will reverse the judgment of the trial court insofar as it disallowed the recovery of punitive damages and remand the case for a new trial limited to consideration of such damages.

*Reversed and remanded.*

RUSSELL, J., dissenting.

The defendant was a drunken driver who was guilty of gross negligence. From those facts alone, the majority opinion extrapolates a conclusion that his conduct "evinces a *conscious* disregard of the rights of others" warranting an award of punitive damages. There is only one road available to get the majority opinion to its destination: the theory that one who voluntarily becomes intoxicated and then undertakes to drive *ipso facto* evinces a conscious disregard of human life. That theory is the sole foundation upon which the majority opinion rests. Unfortunately, it is the theory espoused by a California court which we expressly disapproved in *Essex* v. *Commonwealth*, 228 Va. 273, 283 n. 3, 322 S.E.2d 216, 221 n. 3 (1984).

We disapproved that theory for the very good reason that its premises do not support its conclusion: it does not follow from the fact of drunken driving that the drunken driver either intends to injure others or is indifferent to the risk that he might do so. Only speculation can get us to that conclusion, and we do not base jury instructions upon speculation. In this case, there is a complete lack of evidence concerning the defendant's intentions, attitude, or state of mind. The award of punitive damages rests entirely on speculation.

The majority opinion wisely limits its operation to "the egregious set of facts presented in this case." The bench and the bar may well be perplexed by the difficulty of relating other sets of facts to this one. Will a blood alcohol level of .20% be sufficiently "egregious" to warrant an instruction on punitive damages? Will .15% be enough? .10%? .09%?

I would adhere to the rule which has served us well for many years: an instruction on punitive damages may be granted only where there is evidence, not mere speculation, that the defendant was motivated by malice, or that his conduct evinced "a *conscious* disregard of the rights of others." Because the trial court correctly discerned the absence of any such evidence here, I would affirm.

COMPTON, J., joins in dissent.