# CIRCUIT COURT OF THE CITY OF WINCHESTER

Simbeck, Inc.

v.

Dodd-Sisk Whitlock Corp.
and James H. Dodd

November 22, 1997

Case No. (Law) 96-41

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Defendants' Motion for Judgment Notwithstanding the Verdict or for a New Trial following a jury trial on tortious interference and breach of fiduciary duty actions in which the jury imposed both compensatory and punitive damages against the defendants. Upon consideration of the argument of counsel and the memorandum of authorities filed by them, the Court has made the following decision to deny the defendants' motion with respect to the verdict for compensatory damages and to grant the motion with respect to the verdict for punitive damages.

## I. *Statement of Material Facts*

The Plaintiff Simbeck operates a trucking business in Winchester, Virginia.

Defendant Dodd-Sisk Whitlock Corp. (DSW) is an insurance agency in Louisa, Virginia, who formerly acted as Simbeck's insurance agent. The individual Defendant, James Dodd, is an insurance agent and representative of Dodd-Sisk Whitlock.

After numerous pretrial rulings, this case was tried on the Plaintiff's claims that James Dodd allowed Simbeck's insurance coverage to be canceled on July 15, 1995, because he refused to release a ten day hold on an insurance quote and because Dodd improperly asked Simbeck to sign a note, both of which were claimed to be violations of acceptable business practices in the trucking insurance business.

The evidence is in conflict and hotly contested, and the trial, which was scheduled for one day, lasted three, September 19, 20, and 22, 1997.

By the time of the trial, Simbeck's rights of action had been reduced to two counts of liability against DSW and Dodd: (1) tortious interference with a business expectancy; and (2) breach of fiduciary duty. After two full days of evidence, on the evening of Saturday, September 20, 1997, the jury found in favor of Simbeck, awarded compensatory damages in the amount of $30,000.00, and made a determination that it would award punitive damages against both defendants. Upon defendants' motion to remit the jury's compensatory damage award to conform to Simbeck's *ad damnum*, the Court remitted the compensatory damage award to $12,328.00.

On September 22, 1997, the jury then heard evidence on the issue of the amount of the punitive damages to be assessed against DSW and Dodd, and the jury awarded punitive damages against DSW in the amount of $17,700.00, and against Dodd in the amount of $60,000.00. The Defendants then filed their post trial motions to set aside the verdicts which are now before the court.

## II. *Conclusions of Law*

### 1. *Standard to Set Aside Verdict*

A trial court may enter judgment notwithstanding the verdict. Virginia Code § 8.01-430. "The role of the trial court under these circumstances is *explicit and narrowly defined.*" (Emphasis added.) *Rogers v. Marrow*, 243 Va. 162, 166, 413 S.E.2d 344 (1992).

[This power] can only be exercised where the verdict is plainly wrong or without credible evidence to support it. If there is a conflict in the testimony on a material point, or if reasonable men may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury.

(Citations omitted.) *Lane v. Scott*, 220 Va. 578, 581, 260 S.E.2d 238 (1979).

A party receiving a jury's verdict is entitled "to the benefit of all substantial conflict in the evidence, as well as all inferences that may be drawn therefrom . . . ." *Graves v. Nat. Cellulose Corp.*, 226 Va. 164, 169-170, 306 S.E.2d, 898, 901 (1983), *quoting Matney v. Cedar Land Farms*, 216 Va. 932, 224 S.E.2d 162 (1976). *Accord Rogers v. Mullins, supra*, at p. 166.

Where the evidence fairly supports multiple inferences, a trial judge ruling on a motion to strike must adopt those inferences most favorable to the party whose evidence is challenged, even though he may believe different inferences are probable. *R. F. & P. Railroad v. Sutton*, 218 Va. 636, 643, 238 S.E.2d 826, 830 (1977). By the same logic, when conflicting inferences have been resolved by a jury and those necessarily underlying the conclusion reflected in the verdict are reasonably deducible from the evidence, a trial judge should not set the verdict aside.

*Lane v. Scott, supra*, at p. 582.

If any credible evidence supports the verdict, then the verdict must stand.

Obviously, facts need not be proven by *direct* evidence, but instead, may be established by *circumstantial* evidence. Indeed, a jury may draw all reasonable inferences and deductions from the evidence adduced. *Northern Virginia Power Co. v. Bailey*, 194 Va. 464, 470, 73 S.E.2d 425, 429 (1952) [additional citations omitted; emphasis in original]. *Fobbs v. Webb Building Limited Partnership*, 232 Va. 227, 230, 349 S.E.2d 355 (1986).

The jury is the trier of fact. "It is the jury's function to determine the credibility of witnesses and the weight of the evidence and to resolve all conflicts in the evidence. *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57, 419 S.E.2d 627, 630-31 (1992); *Carter v. Lambert*, 246 Va. 309, 314, 435 S.E.2d 403 (1993).

## 2. *Tortious Interference*

The tort of tortious interference with a contractual relationship is a creature of the twentieth century in Virginia. The first case, which this court has found, in which the Supreme Court recognized the tort of tortious interference with a contractual relationship is *Brotherhood of R. T. v. Vickers*, 121 Va. 311, 312-13, 93 S.E. 577, 577 (1917) (allegations that third party wrongfully and unjustifiably interfered with contractual relation between plaintiff and his employer states cause of action). As the country became more industrialized and more sensitive to the excesses of unregulated competition, the laissez-faire attitudes which had characterized the permissive legal view of business practices in the nineteenth century changed, and the courts gradually became intolerant of what they perceived to be unfair business practices. "As our industrial conditions have developed, we have found that men may be oppressed quite as effectively and disastrously through business methods and practices as by force and violence. The law, therefore, must be invoked for the protection of the individual against the abuse of power." Louis D. Brandeis, 1911, quoted in Alfred Lief, *The Brandeis Guide to the Modern World*, p. 85 (1941).

The quiescence of the first century and a half of the Virginia law of interference has now been replaced by a flood of tortious interference litigation. Since the Supreme Court decided *Duggin v. Adams*, 234 Va. 221, 226-28 (1987), ten years ago, it appears that the Supreme Court has considered the doctrine at least eighteen times in its reported decisions. If the experience of this Court is any measure, the average trial court probably visits the doctrine at least that many times a year.

The facts of this case illustrate the importance of a thorough understanding of the tort of tortious inference and the myriad contexts in which it may arise. It is important to note that it is an economic tort designed to punish both unlawful and sharp *competitive* business practices, and it generally arises, although not in this case, in circumstances where one wrongfully expropriates a business opportunity for himself or improperly intervenes in another's business relationships to expand his own business. Ac-

cordingly, its purview may wax and wane with the business mores of the times. As the editors of 45 Am. Jur. 2d, *Interference*, § 1, state:

> Generally, the theory of the tort of interference is that the law draws a line beyond which no member of the community may go in intentionally intermeddling with the business affairs of others.
>
> Not every interference is actionable; the fact that defendant's activity has injured plaintiff's business does not mean that plaintiff necessarily is entitled to a remedy. An injury may be of the kind which, in a relatively free economy, a citizen is obliged to suffer, an injury resulting from lawful competition of which he cannot complain. The courts take the position that if means of competition are fair, advantage should remain where success has put it, but if acts complained of do not rest on some legitimate interest or if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, the ensuing loss should be redressed.
>
> Where interference has been charged for an act lawful in itself, whether there is a right to recover is determined by balancing the interests of the defendant in doing his otherwise lawful act and of the plaintiff in being free from interference. It is necessary to balance the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances, including the method and means used and the relation of the parties.
>
> *A principal factor in striking the balance between permissible behavior and interference is the varying ethical standards of the community, and especially the standards of business ethics. Accordingly, because the standards of business ethics move up and down, the line of demarcation between permissible behavior and interference is not always distinct but varies from time to time. Therefore, in connection with the tort of interference, precedents are only suggestive*, not conclusive, and the fact that a situation is one in which a remedy for interference has never previously been granted does not deter the courts from granting a remedy.

The Supreme Court recently noted the tension between the various types of permissible conduct in a competitive market and the boundaries of the tort of tortious interference in *Maximus, Inc. v. Lockheed Information Systems*

*Co.*, 254 Va. 408 (1997) ("[l]iability determinations . . . [in tortious interference cases] . . . involve balancing of interests.")

The instant case turned on the Plaintiff's allegations that the Defendant Dodd breached the standards of permissible conduct in the trucking insurance industry by seeking to have the plaintiff sign a note for the amount of delinquent premiums due the Defendant and by the Defendant's refusing to release a ten day hold on an insurance quote, which the plaintiff claimed caused it to suspend its trucking operations for a short time. There was no written prohibition against either of the these ostensibly benign acts, but rather evidence was presented by the plaintiff that they were part of the business ethos of the industry and that they were standards of acceptable conduct which the Defendants had violated. The absence of a litmus, written rule placed this case in the penumbra of the tort. The evidence on these points was in conflict, but the jury resolved those conflicts in the plaintiff's favor.

*Duggin v. Adams*, 234 Va. 221, 226-228, 360 S.E.2d 832 (1987), illustrates the apogee of the tort of interference, and it seems to be the wellspring of the current flood of interference actions. In that case, the plaintiff claimed that the Defendant, as the seller's attorney, used confidential information to purchase property for himself; the Virginia Supreme Court, which was apparently piqued by the attorney's reprehensible conduct (there was a dissent), reversed the trial court's sustaining of the defendant's demurrer and in doing so appears to have expanded the doctrine of interference to the broadest extent currently recognized in the United States:

> Unlike a party to a contract for a definite term, however, an individual's interest in a contract terminable at will is essentially only an expectancy of future economic gain, and he has no legal assurance that he will realize the expected gain. See Restatement (Second) of Torts § 766 comment g (1979). Thus, the cause of action for interference with contractual rights provides no protection from the mere intentional interference with a contract terminable at will. *Hechler Chevrolet v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985). *Accord Chaves*, 230 Va. at 121, 335 S.E.2d at 103 (distinguishing interferences with contracts terminable at will and prospective business relationships from interferences with existing contracts not terminable at will). In short, the extent of permissible third-party interference increases as the degree of enforceability of a business relationship decreases.

Nevertheless, the fact that a contract is terminable at the will of the parties does not make it terminable at the will of others. See *Truax v. Raich*, 239 U.S. 33, 38 (1915) (recognizing that the weight of authority considers a third party's unjustified interference with an employment-at-will contract actionable). However, the prima facie approach of basing liability on a mere showing that a third party's intentional interference with a contract terminable at will caused damage requires too little of the plaintiff.

Consequently, when a contract is *terminable at will*, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed *"improper* methods." *Hechler Chevrolet*, 230 Va. at 402, 337 S.E.2d at 748 (emphasis added); Restatement (Second) of Torts § 766, comment g (1979) (Until a party terminates an at-will contract, it is "valid and subsisting, and [a third party] may not *improperly* interfere with it." (emphasis added)). *Accord Glass v. Glass*, 228 Va. 39, 51-52, 321 S.E.2d 69, 76-77 (1984) (recognizing intentional misconduct on part of interferer as element of cause of action for interference with prospective business or economic advantages and for interference with contracts terminable at will); *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592, 597 (1984) (cause of action for interference with prospective contract arises when interference both intentional and improper); *Brotherhood of R. T. v. Vickers*, 121 Va. 311, 312-13, 93 S.E. 577, 577 (1917) (allegations that third party wrongfully and unjustifiably interfered with contractual relation between plaintiff and his employer states cause of action).

Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982). Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship. *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 210, n. 11, 582 P.2d 1365, 1371, n. 11 (1978) (plaintiff claiming intentional interference with contractual or other economic relations need not allege and prove all elements of liability for independent tort); *Island Air,*

*Inc. v. LaBar*, 18 Wash. App. 129, 143-44, 566 P.2d 972, 980 (1977) (competitor's acquisition and use of confidential contractual information in violation of oral covenant not to compete constituted improper method of interfering with plaintiff's at-will contract). *Compare Glass*, 228 Va. at 52-54, 321 S.E.2d at 77-78 (decision of corporate directors and officers to sell majority stock to prospective purchaser was not prima facie case of tortious interference with minority stockholders' business expectancy with another prospective purchaser) *with Allen Realty Corp.*, 227 Va. at 449, 318 S.E.2d at 597 (allegation that accountant hired to assist in plaintiff realty company's liquidation prevented plaintiff from entering into contract with prospective purchaser by intentionally failing to disclose purchaser's offer states prima facie cause of action for interference with prospective contract).

Methods also may be improper because they violate an established standard of a trade or profession, *Top Service Body Shop*, 283 Or. at 210, 582 P.2d at 1371, *or involve unethical conduct, Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich. App. 361, 377, 384, 354 N.W.2d 341, 348, 350-51 (1984). Sharp dealing, overreaching, or unfair competition may also constitute improper methods. *Kinco, Inc. v. Schueck Steel, Inc.*, 283 Ark. 72, 78, 671 S.W.2d 178, 181-82 (1984) (trial court correctly refused to direct verdict for defendant where substantial evidence showed that defendant competitor employed sharp and overreaching actions to interfere with plaintiff's business expectancy); *Light v. Transport Insurance Company*, 469 S.W.2d 433, 439 (Tex. Civ. App. 1971) (recognizing that sharp dealing, overreaching, or other competitive conduct "below the behavior of fair men similarly situated" constitutes improper methods of interfering with existing business relationship). *Cf. Hechler Chevrolet*, 230 Va. at 402-03, 337 S.E.2d at 748 (not prima facie improper for competitors to inform customers truthfully that plaintiff car dealer would no longer market competing product or for competitors to entice plaintiff's employees to leave employment, absent allegations of wrongful means).

This expansive dicta and the Supreme Court's litany of examples of improper conduct which may be the predicate for the tort has spawned legions of cases in which the plaintiff's lawyer, confronted with a breach of contract case, tacks a tortious inference right of action onto what theretofore would have been a simple breach of contract action. *See, e.g. Brauer v.*

*NationsBank*, 251 Va. 46, 466 S.E.2d 736 (1996). However, the interference by improper methods, no matter how broadly interpreted are but two elements of the multifactored tort of tortious interference. Moreover, the order of the *Duggin* court's citing of the various kinds of improper actions is instructive, because they proceed in descending order of reprobation from acts *malum in se,* such as violence and bribery, to acts which are *malum prohibitum,* such as violation of a trade standard. One may seriously question whether violation of an *unwritten* business standard is an act *malum prohibitum* in the literal sense of that term, but that was what was at issue in this case.

As the Supreme Court recently noted in *Maximus, Inc. v. Lockheed Information Systems Co., supra,* the prima facie elements of the tort of interference with a contract expectancy are a showing that:

1. The plaintiff had a contract expectancy;
2. The defendant knew of that expectancy;
3. The defendant intentionally interfered with the expectancy;
4. The defendant used improper methods to interfere with the expectancy;
5. The plaintiff suffered loss as a result of the defendant's disruption of the plaintiff's contract expectancy.

Actual malice is not a required element of the tort and only comes into play if it is present as part of the jury's consideration of the issue of punitive damages.

The existence or expectation of a business relationship is a *sine qua non* for a viable interference action. *See Maximus, Inc. v. Lockheed Information Systems Co., supra*; and *Chaves v. Johnson,* 230 Va. 112, 120, 335 S.E.2d 97 (1985). The defendant must have actual knowledge of the existence of the business relationship or knowledge of facts that, upon reasonable inquiry, should lead to disclosure of the existence of the contract or potential business relationship. *Restatement (2d) of Torts,* § 766, Comment I (1977); *see, e.g., Meadow Ltd. Partnership v. Heritage Savings & Loan,* 639 F. Supp. 643, 651 (E.D. Va. 1986) (Foreclosing on property, the defendant did not know of the alleged contract to sell the property between the debtor and a third party.). Generally, the interference must be with an existing contract. Here again in this case, the business expectancy of a renewal insurance policy was on the outer reaches of the concept of a cognizable business expectancy. The Plaintiff did not accept the offer of insurance when the quote was released but instead placed its insurance with

Liberty Mutual which offered a lower rate. In this court's view, the probability of the business expectancy was the weakest part of the plaintiff's evidence, and on this point, the plaintiff's evidence tottered on a scintilla of evidence.

## 3. *Fiduciary Duty*

The instruction given on this issue was crafted by the Court after considerable thought, and it represents the court's understanding of the law and the critical importance of the particular facts in determining the nature of the duties flowing from an agency relationship. The Defendants' argument that Simbeck had other insurance agents soliciting quotes for it at the same time as the Defendants, thereby vitiating any fiduciary duty which the defendant may have owed to the plaintiff, has no merit. If the law were that a principal, who has employed more than one agent for the same purpose, was owed no fiduciary duty by any of these agents because of the multiple agencies, then the hapless party who hired two lawyers to represent him is certainly in an unfortunate position, because under the defendant's theory neither lawyer would owe the defendant a fiduciary duty, because the principal had not reposed his complete trust in either of them. The jury found for the Plaintiff under proper instruction and upon facts sufficient to support their verdict on the issue of fiduciary duty.

## 4. *Damages*

Interference is an economic tort, and where it is proven, the Plaintiff may potentially recover both compensatory and punitive damages. 45 Am. Jur. 2d, *Interference*, §§ 58 and 61. The compensatory damages potentially recoverable are the plaintiff's direct expenses, including lost profits, caused by the interference. *See Bettius & Sanderson v. National Union Fire Ins. Co.*, 839 F.2d 1009, 1012 (4th Cir. 1988); *accord Hop-in-Food Stores, Inc. v. Serv-N-Save, Inc.*, 247 Va. 187, 190-91, 440 S.E.2d 606 (1994); *United Construction Workers v. Laburnum Const. Corp.*, 194 Va. 872, 75 S.E.2d 694 (1953). As the Supreme Court stated in *Goldstein v. Kaestner*, 243 Va. 169, 173, 413 S.E.2d 347 (1992):

> In order to award lost profits, the trier of fact must have evidence which provides a sufficient basis for estimating profits with reasonable certainty. *Boggs v. Duncan*, 202 Va. 877, 883, 121 S.E.2d 359, 363 (1961). However, this does not require the plaintiff to

prove an exact monetary amount. As we stated in *Murray v. Hadid*, 238 Va. 722, 385 S.E.2d 898 (1989), "[a] plaintiff is not required to prove the exact amount of his damages; however, he is required to show sufficient facts and circumstances to permit a jury to make a reasonable estimate of those damages." 238 Va. at 731, 385 S.E.2d at 904.

In *Mullen v. Brantley*, 213 Va. 765, 768, 195 S.E.2d 696, 699-700 (1973), the Supreme Court ruled as follows:

When an established business, with an established earning capacity, is interrupted and there is no other practical way to estimate the damages thereby caused, evidence of the prior and subsequent record of the business has been held admissible to permit an intelligent and probable estimate of damages . . . . But where a new business or enterprise is involved, the rule is not applicable for the reason that such a business is a speculative venture, the successful operation of which depends upon future bargains, the status of the market, and too many other contingencies to furnish a safeguard in fixing the measure of damages.

Tortious interference cases frequently produce a problematic damage picture, but the jury could "infer from the evidence that this decrease in the plaintiff's business was a proximate result . . ." of the defendant's action in not releasing the quote. In *Worrie v. Boze*, 198 Va. 533, 543, 95 S.E.2d 192 (1956), the Supreme Court considered the problematic nature of the damage evidence which such cases frequently present:

It is well settled that in actions of this character involving injury to business or loss of profits, where the existence of a loss has been established, absolute certainty in proving its quantum is not required. Where the plaintiff has shown to the satisfaction of the jury that he has suffered substantial damage by the injury, he is not precluded from recovering nor confined to merely nominal damages because he cannot show the exact amount with certainty. "[The] quantum may be fixed when the facts and circumstances are such as to permit of an intelligent and probable estimate thereof." *Jefferson Standard Life Ins. Co. v. Hedrick*, 181 Va. 824, 835, 27 S.E.2d 198, 202, and cases there collected.

*Id.* at 542.

### 5. *Punitive Damages*

Care must be taken not to confuse the law governing proof of the tort of interference with the law governing an award of punitive damages, because similar terms are used in each context. For example, proof of actual malice or ill will is not necessary in order to recover for tortious interference with an existing contract that is not terminable at will. *Chaves v. Johnson*, 230 Va. 112, 121, 335 S.E.2d 97 (1985). What is required is the intentional doing of a harmful act without legal justification or excuse. Accordingly, liability may be established where it is proven that the defendant had knowledge or grounds to know of the contract or expectation and induced a party to breach the contract or thwart the economic expectation without justification. *See Maximus, Inc. v. Lockheed Information Systems Co., supra.* This lesser *scienter* requirement for proof of the tort is not to be confused with the concepts of "malice" and "wanton" conduct which are the underlying justification for an award of punitive damages.

Punishment of an "outrageous act" is the societal and legal rationale for the imposition of punitive damages, as the Supreme Court stated in *Hamilton Dev. Co. v. Broad Rock Club, Inc.*, 248 Va. 40, 45, 445 S.E.2d 140 (1994):

> Punitive damages, the purpose of which is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others, may be recovered "only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 685, 152 S.E.2d 271, 277 (1967). *Accord Puent v. Dickens*, 245 Va. 217, 219, 427 S.E.2d 340, 342 (1993).

"Punitive damages are damages, other than compensatory damages, awarded against a person to punish him for his outrageous conduct and to deter him and others from similar conduct in the future." Restatement Second of Torts § 908(1). The Restatement comment further states "[t]he conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others." "Generally there must be proof of facts tending to show actual malice in order to justify an award [of punitive damages]." 45 Am. Jur. 2d, *Interference*, § 61.

While the tort of tortious interference was expanded by the Supreme Court in *Duggin v. Adams, supra,* this does not mean that the law of punitive damages was implicitly and similarly expanded. Trade customs may be breached giving rise to a contract action, but punitive damages are not recoverable in those contract actions. Trade customs are expressly recognized as potentially being part of a party's contract in the Uniform Commercial Code. Virginia Code § 8.1-205(2). *See also Arkla Lumber & Mfg. Co. v. West Virginia Timber Co.,* 146 Va. 641, 648, 132 S.E. 840 (1926), the Supreme Court approved a jury instruction stating that a party is "not bound by any custom or usage which would add to or vary the terms of its contract . . . unless they had actual notice of such custom or usage, or unless the custom or usage was so general in the trade or business . . . that they will be presumed to have knowledge of such custom or usage." The burden of proof of a trade custom and usage is on the party advancing that position. *State Farm Mut. Ins. Co. v. Powell,* 227 Va. 492, 318 S.E.2d 393 (1984). *See also Walker v. Gateway Milling Co.,* 121 Va. 217, 221-222, 92 S.E. 826 (1917). Violations of trade standards were at issue in this case.

The logic underlying *Worrie v. Boze,* 198 Va. 533, 543, 95 S.E.2d 192 (1956), indicates that if an act, otherwise lawful, is the predicate for the tort, then the act must have been done "with malice or wantonness" in order to support an award of punitive damages. In *Maximus, Inc. v. Lockheed Information Systems Co., supra,* the Supreme Court implicitly recognized this concept: "we have identified actions as improper which are not themselves tortious or illegal, such as unfair competition or unethical conduct." If the act, such as breach of a unwritten business standard, is not otherwise illegal or tortious and is not accompanied by actual malice, how can such an act be a predicate for the award of punitive damages. Otherwise, the rule would be simply that where tortious inference is proven, then *ipso facto* the predicate for recovery of punitive damages has been established. The Supreme Court had never so held and to do so would violate the balancing of interests which is required when the culpable action is not unlawful or tortious in itself and is in the less egregious end of the spectrum of proscribed conduct.

As the Supreme Court noted in *Owens-Corning Fiberglas Corp. v. Watson,* 243 Va. 128, 144, 413 S.E.2d 630 (1992):

> The imposition of punitive damages is not favored generally and, "[b]ecause punitive damages are in the nature of a penalty, they should be awarded only in cases of the most egregious con-

duct." *Philip Morris Incorporated v. Emerson*, 235 Va. 380, 407, 368 S.E.2d 268, 283 (1988).

We have stated "that negligence which is so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct, will support an award of punitive damages . . . ." *Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988). Willful and wanton negligence is defined as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984) (citation omitted); *see also Infant C. v. Boy Scouts of America, Inc.*, 239 Va. 572, 581-83, 391 S.E.2d 322, 327-28 (1990). Of like effect is *Bowers v. West*, 244 Va. 139, 150-151, 419 S.E.2d 661 (1992):

A litigant, who seeks an award of punitive damages, must present evidence that the defendant's acts were "so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct . . . ." *Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988). We have discussed the type of conduct which would support an award of punitive damages.

"In order that one may be held guilty of willful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result."

*Infant C. v. Boy Scouts of Am.*, 239 Va. 572, 581, 391 S.E.2d 322, 327 (1990) (quoting *Thomas v. Snow*, 162 Va. 654, 660, 174 S.E. 837, 839 (1934)).

In this case, there was no evidence of actual malice, nor is there evidence that Dodd acted in wanton disregard of the Plaintiff's rights. Viewing the evidence most favorably to the Plaintiff, the Defendant violated unwritten trade customs or ethical practices in the trucking insurance business in an effort to make the plaintiff pay a debt owed to the defendants, so no reasonable person could conclude that this was so far beyond the pale of acceptable behavior as to be "outrageous" or wanton. *Cf. Harris v. Harman*,

253 Va. 336 (1997) ("Willful and wanton negligence, the third level, is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.").

The law of damages recognizes that there are varying degrees of human conduct, so there is a continuum of culpability, and it is only the "outrageous" departures from reasonable and lawful conduct which permit the imposition of punitive damages. In this case, the Defendant asked for a note for an underlying debt and refused to release an insurance quote, both of which are lawful acts, in an effort to get Simbeck to pay them what they were owed. These acts were not outrageous or wanton, nor were they done in an effort to harm the plaintiff or under circumstances that the Defendant could reasonably conclude that Simbeck would be harmed. All Simbeck had to do was sign the note, and it would not have suffered any injury. These violations of trade standards were the basis of both the tortious interference and the breach of fiduciary duty rights of action, and they are insufficient as a matter of law to justify the imposition of punitive damages.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. Defendants' Motion to set aside the verdict for compensatory damages is denied.

2. Defendants' Motion to set aside the verdict for punitive damages is granted.

3. Simbeck, Inc., shall have judgment against James H. Dodd and Dodd-Sisk Whitlock Corp. in the amount of $12,328.00 with interest thereon until paid from September 22, 1997, and the costs of this action.