# Hop-In Food Stores, Inc.

### v.

# Serv-N-Save, Inc.

Record No. 930340

February 25, 1994

Present: All the Justices

*Gregory L. Lyons (Gerald A. Dechow; David O. Williamson; Moss & Rocovich,* on brief), for appellant.

*Bradley D. McGraw (David B. Hart; Robert A. Mullen; Wooten & Hart,* on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

This is an action for trespass arising from a cooperative venture for the operation of a retail business. The dispositive question is whether one of the venturers is liable to the other for profits allegedly lost by reason of the trespass.

In November 1980, appellant Hop-In Food Stores, Inc. (Hop-In), as lessor, and appellee Serv-N-Save, Inc. (Serv), as lessee, entered into a 20-year "Special Purpose Lease" of property in Chesterfield County. According to the lease, the lessee Serv had the exclusive right to use the property for the special purpose of selling gasoline and other petroleum products. The lessee also had the right to install, operate, repair, and maintain its own dispensing equipment, island apron, and storage tanks used in connection with sale of the gasoline. The lessor Hop-In reserved the right to continue its use of the property for the operation of a retail convenience store.

At the same time, the parties executed a "Commission Marketing Agreement" in which Hop-In agreed to operate Serv's gasoline dispensing equipment at the site and to sell gasoline supplied by Serv. Under the arrangement, the customer pumped the gasoline, Hop-In's store employees collected the money, and Hop-In was compensated for its work under the agreement by a commission based on the quantity of gasoline sold. The parties had similar contractual relationships in connection with Hop-In's operation of convenience stores at other Virginia locations.

In 1984, without notice to Serv, Hop-In sold the Chesterfield property to third parties, who leased the site back to Hop-In. The gasoline sales operation continued on the property until 1986 when Hop-In unilaterally terminated Serv's lease in order to sell Hop-In's assets on the leased property to Circle D Marts, Inc., formerly known as Davis Express Marts, Inc. (Davis). In August 1986, without notice to Serv, Hop-In hired a contractor who removed Serv's equipment and the motor fuel inventory stored on the site.

The present appeal is the third time aspects of this dispute have reached this Court. In September 1986, Hop-In and Davis filed a declaratory judgment action against Serv in the court below seeking a ruling that Hop-In had the right to terminate the lease upon cessation of Hop-In's business. The trial court sustained Serv's demurrer, and we reversed and remanded the case, holding that declaratory judgment could properly be maintained to construe the lease. *Hop-In Food Stores, Inc v. Serv-N-Save, Inc.*, 237 Va. 206, 375 S.E.2d 753 (1989).

Upon remand, the trial court ruled in favor of Serv, deciding that the effect of the lease, when read with the Commission Marketing Agreement, was to grant Serv a leasehold interest in the realty, or a license coupled with an interest, neither of which was revocable at will by Hop-In. By order entered October 29, 1991, we refused Hop-In's petition for appeal, thus ending that action. *Hop-In Food Stores, Inc. v. Serv-N-Save, Inc.,* Record No. 911167.

In the meantime, Serv filed the present action in September 1990 against Hop-In and Davis. Serv sought damages, including $750,000 in lost profits, in a seven-count motion for judgment.

In two counts, Serv sought relief against Hop-In only. In Count 1, Serv alleged that Hop-In's entry upon the leased real estate to remove Serv's equipment constituted a trespass. In Count 2, Serv alleged that Hop-In's termination of the Commission Marketing Agreement constituted "a breach of the covenant of continuous operation contained in the agreement." In Counts 3 and 4, Serv sought relief against only Davis in ejectment and unlawful detainer. In the remaining counts, Serv sought relief against Hop-In and Davis, jointly and severally, for conspiracy and tortious interference with contractual rights. In a grounds of defense, Hop-In and Davis denied Serv's allegations.

The case was tried before a jury in September 1992. At the beginning of the trial, the court announced its ruling on Serv's pre-trial motion for partial summary judgment. The court sustained the motion, deciding that Hop-In had committed a trespass as alleged in Count 1.

During discussion of the instructions, the court ruled that the issue of lost profits would be submitted to the jury. At this point, Serv elected to abandon all counts except Count 1 and to proceed to the jury upon its claim for trespass against Hop-In. Also, Serv voluntarily dismissed Davis as a defendant. Counts 2 through 7, including Count 2 alleging breach of the continuous operation covenant, were dismissed with prejudice.

Instructed that Hop-In trespassed and was liable to Serv for damages, the jury returned a verdict against Hop-In for $51,923.00 for property damage and $172,000.00 as lost profits. The trial court confirmed the verdict, and we awarded Hop-In this appeal from the December 1992 judgment order.

On appeal, Hop-In does not contest the portion of the judgment for property damage, which represents the depreciated value of the equipment damaged or destroyed by Hop-In's contractor. Hence, the broad issue is whether, in this tort action for trespass, the trial court erred in allowing recovery of lost profits.

In Virginia, loss of future profits proximately caused by wrongful conduct, which results in the interruption or destruction of an established business, may be recovered from a tort-feasor, provided the lost profits are capable of reasonable ascertainment and are not uncertain, speculative, or remote. *United Constr. Workers* v. *Laburnum Constr. Corp.*, 194 Va. 872, 887, 75 S.E.2d 694, 704 (1953), *aff'd*, 347 U.S. 656 (1954).

In the present case, the evidence relating to the threshold question whether Serv was entitled to recover for loss of future profits, as distinguished from the question whether the amount of the alleged loss was established with reasonable certainty, was virtually undisputed. In 1986, Hop-In decided to sell the assets of its Chesterfield convenience store. Davis wished to purchase the business, but it desired to sell its own gasoline at the location; the "only interest" Davis had in the property was to put its own "gasoline products in there." Davis "would not close the deal" unless Serv was "terminated." Hop-In approached Serv in an attempt to persuade Serv "to sell out." Because of "deterioration" in the relationship between Hop-In and Serv, Serv considered the offer, but the parties could not reach an agreement.

Davis then approached Serv in an attempt to buy Serv's equipment located on the site. These negotiations were unsuccessful and the "communication" with Serv "had ceased" when the "offers broke down."

Subsequently, Hop-In's president wrote to Serv's sole shareholder and president on July 16, 1986, stating "that Hop-In will terminate its business operations" at the Chesterfield location "on August 1, 1986 and has effected a lease cancellation as of that date." Serv's president responded by letter of July 23, stating that Hop-In's "proposed handling of the matter is not in accordance with the terms of the Lease." Serv took the position "that the termination of the business operation which Serv-N-Save and Hop-In are operating jointly" did not terminate the lease. The letter concluded: "Be assured that Serv-N-Save does not intend to abandon its equipment on the property and it intends to fully assert its rights under the Lease."

On August 8, 1986, Serv's general manager wrote Davis stating, "It is our understanding that you have assumed the position of Hop-In as lessee" and "that you would like to purchase from Serv-N-Save its gasoline equipment and for Serv-N-Save to relinquish its rights to the sale of motor fuels at the leased premises." The letter then set forth Serv's "position with respect to the final disposition of this matter." Serv stated that its "preferred route" was to continue the marketing agreement, with Davis in the capacity of Serv's "marketer." Serv's "second preference" was "the sale of the assets of Serv-N-Save including its lease interest for consideration of $117,000," which represented "the value of the existing installation in place and one-fourth of [Serv's] projected net income over the remaining life of the lease." A copy of the letter was sent to Hop-In and the owners of the premises with the request that Serv be contacted "to discuss the settlement of the total issue."

On the next day, August 9, Hop-In's contractor removed Serv's three underground storage tanks, destroyed Serv's canopy and light fixtures, and hauled away Serv's submerged pumps. "Sometime" after August 9, Serv learned from Davis that its equipment had been "ripped out of that location." This notice came by way of an inquiry from Davis about the disposition of Serv's gas pumps that were "sitting" on the "front porch" of the store. Davis had been notified by Hop-In "that their property was ready for transfer" to Davis. At that point, there was a "level parking lot with no pumps, no gasoline apparatus, no canopy. And it was back filled with crush-and-run gravel."

Subsequently, Davis "assumed" Hop-In's lease with the owners and began operating the store, supplying its own gasoline using equipment owned and installed by Davis. The Davis operation continues on the site.

Through expert testimony, admitted over Hop-In's objection, Serv presented evidence that it had lost an estimated $582,021.00 in profits due to the removal of its equipment by Hop-In. This figure was developed by an analysis of Serv's profits during its six years of operation at the Chesterfield location and six years of Davis's profit history at the site.

On appeal, Serv argues that the trial court correctly allowed the recovery of lost profits as a result of Hop-In's trespass because the evidence was sufficient to allow a jury to find that Serv "intended to, attempted to, could and would have continued to profitably conduct its gasoline sales operation had Hop-In not forcibly removed Serv-N-Save and installed a competing gasoline sales operation." Serv argues that it had successfully conducted its operation at the Chesterfield location for six years before the trespass, had the right to continue to do so for 14 years following the trespass, took all reasonable steps under the circumstances to continue a sales operation, but was prevented from continuing by removal of its equipment. Serv maintains that its "expert testimony, supported by data, facts and figures, proved the amount of lost profits with reasonable certainty."

We do not reach the question whether lost profits were established with reasonable certainty because we hold that Hop-In's trespass did not proximately cause any loss of future profits that Serv may have suffered.

It will be remembered that the case was submitted to the jury on the trespass count only. This was after Serv had abandoned its claim of an alleged "breach of the covenant of continuous operation contained in the agreement," a claim that Hop-In was barred by the agreement from permanently closing the store.

The trespass was the removal of Serv's equipment from the leased premises. This removal, however, occurred after Serv's business had already been interrupted nine days earlier by Hop-In's action in closing the store and terminating Hop-In's business there, the only mechanism through which Serv sold gasoline from the leased premises.

■ There may be no recovery for loss of future profits when it is uncertain that there would have been any profits at all. *Murray* v. *Hadid,* 238 Va. 722, 731, 385 S.E.2d 898, 904 (1989). As Hop-In argues, Serv's evidence failed as a matter of law to establish that, but for the removal of its equipment, Serv would in the future ever have sold gasoline on the leased premises. Thus, it is uncertain whether in the future Serv would have earned any profits at all had its equipment not been removed.

■ Admittedly, Serv established that it wished to continue its operation at the site and that on at least two occasions after Hop-In closed other stores, Serv had been able to act as the gasoline supplier to Hop-In's successors. But, in the present case, there was no evidence that Davis would have agreed to continue a relationship with Serv if the equipment had not been removed or what the terms of such a relationship would have been. Indeed, the positive, unrebutted testimony was that Davis's "only interest" in the property was if it could place its own "gasoline products in there." In addition, there was no evidence from which a jury could find that Hop-In was going to reopen the store if its deal with Davis failed nor was there evidence that Serv had continued in any location to sell gasoline directly after Hop-In left a site.

■ Accordingly, because the trial court erred in its ruling on lost profits, so much of the judgment below that provides for recovery of such profits will be reversed and annulled, the judgment will be modified, and final judgment will be entered here in favor of Serv for the liquidated amount of $51,923.00, plus interest and costs.

*Reversed, modified, and final judgment.*