**James R. CUMMINGS, III, an infant by James R. CUMMINGS, Jr., his father and Next Friend, and James R. Cummings, Jr., individually, Plaintiffs**

v.

**FISHER–PRICE, INC., a Delaware Corporation, since September 17, 1990, formerly a division of The Quaker Foods Company, a New Jersey corporation, Defendant.**

Civ. A. No. 93–0003–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

June 28, 1994.

Martin J. McGetrick, Chandler, Franklin & O'Bryan, Charlottesville, VA, Mary Ann Barnes, Chandler, Franklin & O'Bryan, Harrisonburg, VA, Linda Miller Atkinson, David D. Whitaker, Philo, Atkinson, Steinberg, White, Stephens & Whitaker, Detroit, MI, for plaintiffs.

James W. Morris, III, Morris and Morris, P.C., Richmond, VA, Charles James Williams, III, Lynne Jones Blain, Morris & Morris, P.C., Richmond, VA, Neil A. Goldberg, Brian D. Knauth, Saperston & Day, P.C., Buffalo, NY, for defendant.

### *MEMORANDUM OPINION*

MICHAEL, District Judge.

The court heard argument on Defendant's Motion for Partial Summary Judgment and Sanctions on May 17, 1994. It is the court's determination that further briefing or oral argument is unnecessary. The issue is ripe for resolution and the court will rule on the motion on the basis of the argument and evidence submitted.

### I. Factual Background

In 1990 the Cummings child, then five years old, rode his Fisher–Price Trike out of control down a slope, into a road, and in front of a car driven by an elderly woman, Hattie Ramsey. The impact threw him over fifty feet and he suffered severe injuries. The parents have brought this suit for negligence in the tricycle design. They have also included a punitive damages claim. The defendant now moves for summary judgment and Rule 11 sanctions on the punitive damages part of the case.

For punitive damages, the plaintiffs allege that Fisher–Price had notice of defects in the trike that had led to injuries of other children, but "willfully and wantonly ignored that knowledge and failed to take remedial measures with regard to the Big Wheel at issue, all of which constitute reckless misconduct and negligence that evidence a conscious disregard to the safety of others...." Complaint ¶ 25.

The specific design failures alleged by the plaintiffs include the following: a) the trike contained no brakes; b) it lacked a visibility device such as a flag; c) it lacked stability and maneuverability; d) it encourages children to lose control because it can go fast; and e) it lacked adequate parental warnings about the danger of slopes and vehicular traffic. Complaint ¶ 15, 18. The complaint further alleges that Fisher–Price did not adequately test the product to identify potential hazards in its design and operation and, although the company had notice of injuries associated with tricycles, did not conduct a recall or retrofit and warning campaign. Complaint ¶ 18.

Plaintiffs primarily rely on one expert witness, a safety engineering consultant named Vaughan Adams, (P's Reply in Opp. to Mot. Summ.J., Ex. C), and data and articles documenting the hazards associated with children and tricycles, (P's Reply, Ex. B, D).[1] The deposition of defendant's former employee Charles Brooks establishes that the company knew of methodologies that reduce the risk associated with using products and knew about the availability of data on tricycle accidents. (P's Reply at 9.) Mr. Brooks did not say that Fisher–Price failed to use a design methodology, as plaintiffs assert. He did say, however, that they did not have a written policy. (D's Reply in Supp. of Summ.J. at 7–10.)

According to the evidence in the depositions, the defendant considered using a flag but chose not to because the flag would pose other threats of injury to children. (D's Reply at 12–13.) Plaintiffs argue that the defendant wantonly failed to consider any other safety device, in the face of knowledge about the hazards of riding the tricycle into the street, the foreseeability that children would not always be supervised while at play, and the company's knowledge of safety engineering methodologies designed to reduce risk. (P's Reply at 8–15.)

Moreover, plaintiffs assert that the defendant wantonly failed to include an adequate safety warning. They claim the provided warning only mentions the danger of allowing children to ride on sloped driveways, not hills, and merely cautions parents to always supervise their children. (P's Reply at 12–13.) Plaintiffs point out that the industry safety standard requires "warnings against use near steps, sloped driveways, *hills*, roadways and alleys." (P's Reply, Ex. G at 10 (emphasis added).) The defendant claims that it did not include the warning about hills because it thought the warning about sloped driveways, a less severe terrain than steep hills, would be sufficient to alert parents to any greater terrain dangers by implication. (D's Reply, Ex. C at 129–30 (Brooks Aff.).)

There is no evidence that Fisher–Price had any notice of defects or incidents involving the particular trike at issue here, though it had access to generalized tricycle accident data. (P's Reply, Ex. B, D (accident data); D's Reply at 7.) None of the reports included in the data submitted by the plaintiffs, which cover accidents in the 1970's and in 1984, explain in detail the circumstances of the accidents between cars and tricycles. Throughout the period covered by the data, the Fisher–Price Trike had not yet been manufactured.

In response to plaintiff's punitive damages claim, the defendant asserts that it used qualified design experts and made a conservative toy that went through several design changes in response to safety concerns. The defendant also argues that none of the safety mechanisms recommended by plaintiff's expert, including the safety flag and hill brakes, are used by any other tricycle manufacturer. (Mot.Summ.J. at 3–11.) Moreover, the defendant argues that the plaintiff has not established that any of the injury data referred to are relevant to the type of accident here, since the only relevant accidents in the data relate to tricycles in general, not the type of tricycle made by Fisher–Price. (D's Reply in Supp. of Summ.J. at 3–5.) The defendant further argues that, though the company

---

1. At the June 17, 1994, hearing on this motion, defense counsel made a motion to exclude this evidence, on the basis that it is not "pleadings, depositions, answers to interrogatories, [ ] admissions on file, [or] affidavits," as required under Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court finds it unnecessary to rule on this motion, in light of the reasoning in this opinion.

may not have used the type of safety methodology mentioned by the plaintiff, the plaintiff has not established that the company failed to use *any* adequate safety design procedure. (D's Reply at 6–9.) Finally, the defendant has submitted evidence that its trike is not the type of "low-slung" "Big Wheel"-type trike that plaintiff's counsel and plaintiff's expert assumed. The Fisher–Price tricycle is a plastic tricycle with a smallish front wheel and raised seat. The "Big Wheel" tricycle's seat sits near the ground and its front wheel is larger than normal, which encourages speed. (Compare D's Reply, Ex. B and F.)

## II. Analysis

### A. Timeliness

■ As a front-line defense to the defendant's motion, plaintiff argues that the motion should be stricken as untimely since it was filed one day later than specified in a prior order of the court. Plaintiff's counsel can show no prejudice, having received the motion on the day it was due. Though the court takes its deadlines seriously, since the defendant made every effort to provide the plaintiff with the motion in a timely fashion, and submitted it to this court only one day after the court's deadline, plaintiff's motion to strike will be overruled and defendant's motion will be judged on its merits.

### B. Summary Judgment

■ Virginia law imposes a heavy burden on a plaintiff seeking punitive damages. The defendant's tort must have been committed under "aggravating circumstances." *Wallen v. Allen*, 231 Va. 289, 297, 343 S.E.2d 73 (1986). The primary purpose of punitive damages is to "punish the wrongdoer 'if he has acted wantonly, oppressively, or with such malice as to evince a spirit of malice or criminal indifference to civil obligations. Wilful or wanton conduct imports *knowledge and consciousness that injury will result* from the act done'." *Id.* (quoting *Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 685–86, 152 S.E.2d 271 (1967) (emphasis in original)). While it is true, as the plaintiffs argue, that actual malice is not a requirement, *Friedman v. Jordan*, 166 Va. 65, 68, 184 S.E. 186 (1936), the cases upholding punitive damages have

involved conduct that either approaches actual malice or exhibits extreme recklessness resulting in clearly foreseeable and immediate injury. The standard for establishing punitive damages is beyond even gross negligence. *Owens–Corning Fiberglass Corp. v. Watson*, 243 Va. 128, 145, 413 S.E.2d 630 (1992) (citing *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 409, 368 S.E.2d 268 (1988)).

In *Jordan* the court upheld punitive damages where a white man driving a car purposefully chased down a black boy on a bicycle and ran him over. 166 Va. at 68, 184 S.E. 186. In *Owens–Corning* the court found an asbestos company liable for punitive damages because it committed certain "positive acts which the jury could have concluded constituted willful and wanton conduct evincing a conscious disregard of the rights of others." 243 Va. at 146, 413 S.E.2d 630. The evidence revealed that the president of the company embarked on a cynical campaign "to use [information on the health risks of asbestos] to benefit Owens–Corning during negotiations with its labor unions; and that, when necessary, he concealed this information to promote the sales of [an asbestos] product." *Id.*

*Emerson* is a glaring example of the stringency of Virginia's punitive damages standard. The court held that Texaco was not liable for punitive damages for burying pentaborane gas, which is more lethal than cyanide, and refusing to tell Philip Morris the contents of unlabelled corroded gas tanks once they were uncovered. 235 Va. at 408–09, 368 S.E.2d 268. The court upheld an award of punitive damages against the chemical disposal company hired to remove and test the waste, the president of which died from inhaling the gas, since the president knew of the immediate and grave danger and released the gas into the air without making his staff wear protective inhalers. *Id.* at 409, 368 S.E.2d 268.

■ The cases upholding punitive damages awards thus involve conduct approaching criminal negligence, or reckless indifference in the face of a known, grave danger. Accordingly, the court has held that the failure to correct a flawed design, even if the

manufacturer knows that the design is hazardous, does not automatically give rise to punitive damages. *Ford Motor Co. v. Bartholomew*, 224 Va. 421, 437, 297 S.E.2d 675 (1982).

In the *Bartholomew* case, a car gearshift slipped from between park and reverse into reverse and a woman's leg was crushed as she chased after the rolling car that contained her child. Ford had notice of the design problem but chalked most mishaps up to driver carelessness. The company decided against design changes because these would present other design problems, and simply advised drivers to make sure the shift level was in "P" when parked. *Id.* at 436–37, 297 S.E.2d 675. The Supreme Court of Virginia upheld the trial court's finding that the failure to change the design was not based on an inappropriate cost factor. *Id.* It analyzed Ford's activities in terms of whether the company investigated the customer complaints and whether the company considered design alternatives. Since Ford did both, and showed good-faith reasons for its choices, the company did not act with sufficient recklessness or wantonness for an award of punitive damages. *Id.*

■ Reviewing plaintiff's evidence, and defendant's motion for summary judgment, according to the standards of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the court finds that the plaintiff has not established the factual predicate necessary for an award of punitive damages under Virginia law. Plaintiffs have established, at most, that Fisher–Price knew that tricycles in general are hard to see on the road, and that, historically, accidents involving tricycles and cars have been an unfortunate fact of life. The evidence shows that the defendant considered placing a visibility flag on the Fisher–Price Trike, but rejected this because it would present other hazards. Though the defendant did not use the methodology urged by plaintiffs' expert, the fact that the defendant used qualified safety designers and testing to make what it considered a "conservative" toy is uncontradicted. The company also included a warning about not riding the tricycle on streets or sloped driveways. (D.Ex. 8.) None of the accident data involve the Fisher–Price Trike at issue here.

The defendant made the type of good-faith design choice that precludes an award of punitive damages under *Bartholomew*. Though their choice may have been mistaken, and their failure to use the safety methodology mentioned by Mr. Adams might be construed as negligent, none of this evidence supports punitive damages. Furthermore, the plaintiff has submitted no evidence that the tricycle accidents in their data involved circumstances similar to the accident in this case. Therefore, they have not established that Fisher–Price was on notice that it had to redesign its product to respond to the dangers associated with steep slopes and roads. The plaintiff has failed to submit sufficient evidence for a jury to find that the conduct of Fisher–Price was wanton, willful, or in conscious disregard of the rights of others, as those terms have been applied under the strict standards of Virginia law.

### C. Sanctions

■ Rule 11 of the Federal Rules of Civil Procedure requires the court to impose sanctions if a pleading is presented for an improper purpose, if a claim makes a frivolous legal argument, if allegations do not have evidentiary support and will not likely have such support after discovery, and if denials of factual contentions are not warranted on the evidence. Fed.R.Civ.Pro. 11(b)–(c). These standards have not been violated here, and therefore sanctions are not warranted.

The plaintiffs may have failed to bring Fisher–Price's omissions within the realm of Virginia punitive damages law, but their argument is not frivolous. There is evidence that the defendant failed to respond to the fact that children riding tricycles near today's busy streets are at serious risk of harm.

The most serious error on the plaintiffs' part was mislabeling the Fisher–Price Trike as a "low-slung" "Big Wheel"-type tricycle when in fact it is different. The court, however, views this inadvertent mislabeling inadequate grounds to impose sanctions. Chil-

dren's tricycles have, like most other formerly generically designed products, become infinitely permutated in our modern society. But if the court is not mistaken, they still all have three wheels, sit so low to the ground that they are hard to see by those behind the wheel of a car, and often travel too fast down hills for the good of their young pilots.

### III. Conclusion

For the reasons stated in this opinion, the defendant's motion for partial summary judgment is granted with respect to the punitive damages claim and denied with respect to sanctions.

An appropriate order shall this day issue.