PRESENT: Hassell, C.J., Lacy, Koontz, Kinser, and Lemons, JJ.,
and Carrico and Compton, S.JJ.

JOHN DOE                                        OPINION BY
                                      SENIOR JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 021513                         April 17, 2003

MAUREEN B. ISAACS, ET AL.


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                        Alan E. Rosenblatt, Judge

     The sole issue in these tort actions is whether the

evidence supports a judgment for common law punitive damages.

     On April 1, 1999, an automobile operated by plaintiff Allen

Leonard Isaacs, in which his wife, plaintiff Maureen B. Isaacs,

was a front-seat passenger, was struck from the rear in the City

of Virginia Beach by an automobile operated by an unknown

motorist.

     Subsequently, the plaintiffs filed separate actions against

defendant John Doe, seeking compensatory and punitive damages as

the result of injuries sustained in the accident.  The cases

were consolidated for trial, and heard by a single jury.

     The defendant admitted liability in both cases; they were

submitted to the jury on the issue of compensatory damages and,

over defendant's objection, on the issue of punitive damages.

     The jury fixed Mrs. Isaacs' compensatory damages at

$275,000 and her punitive damages at $175,000, and fixed Mr.

Isaacs' compensatory damages at $125,000 and his punitive

damages at $175,000.  Overruling defendant's post-trial motion to set the punitive damage awards aside, the trial court entered judgment on the verdicts. Defendant appeals, assigning error to that portion of the judgment awarding punitive damages.

The facts are undisputed.  About 10:25 p.m. on the day in question, the plaintiffs' vehicle approached a city intersection controlled by traffic signals.  The weather was clear and "a little bit dark," the streets were dry, and traffic was "very light."

The plaintiff was operating his vehicle east on Shore Drive about 45 miles per hour in the right lane.  He slowed as he neared the intersection because the traffic light facing him was "red" and a vehicle, also travelling east on Shore Drive, was stopped ahead of him at the light.  As the plaintiff "was about ready to stop, the traffic light changed," and the vehicle ahead of him "took off."  At that moment, the plaintiffs' vehicle "got hit from the back by a car."  Mrs. Isaacs described the impact as "really tremendous" and "awful."

When struck, the plaintiff was "braking" and his "foot went down on the pedal to brake harder, even."  "After that," the plaintiffs' vehicle stopped at "the far side of the intersection in the middle."  He was "really concerned" about his wife's condition.  Mrs. Isaacs, who momentarily lost consciousness, said, "I'm hurt."

At that point, as Mr. Isaacs was standing outside his vehicle, the unknown motorist approached on foot; "he kind of staggered" and Isaacs "was concerned about him." The defendant asked whether anyone was injured and Mr. Isaacs responded, "Yes. My wife is hurt."

The defendant then moved "into the doorway where Maureen was. And he started to shake the car, for whatever reason. It looked like he was having trouble standing where he was," according to Isaacs.

Next, the defendant, "slurring" his speech, said to Mr. Isaacs, "Please don't call the police." Isaacs responded, "I'm gonna have to, because my wife is hurt." The defendant then stated to Mrs. Isaacs, "Don't call the police. I need to talk to you first." Mr. Isaacs again rejected the request.

Next, defendant said, "You could stop here. I could bring my car down . . . I can park over there, and you can park over there, we will be out of the way of everybody, and we can talk." When Isaacs said he could not talk further, defendant said, "Well, I'll run up and get my car and come down here." Assuming defendant would care for his wife while he went for help, Isaacs "walked across the street" and called emergency personnel. Mrs. Isaacs remained in the vehicle, feeling "abandoned and alone and scared."

3

Neither of the Isaacs saw nor heard again from the defendant, who they described as a white male about 35 to 40 years of age. They did not observe the defendant's vehicle before or after the incident.

The impact of the collision pushed the "back end" of the plaintiffs' car forward, and the floor in the rear "popped up;" the front seats "ended up all the way down on the floorboard."

At the scene, Mr. Isaacs did not complain of injury to the investigating police officer while Mrs. Isaacs "complained of back and leg injuries." She testified that, after the impact, she had blood on her face and hand.

Virginia law applicable under these circumstances is clear. "[N]egligence which is so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct, will support an award of punitive damages in a personal injury case." Booth v. Robertson, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988). See Code § 8.01-44.5 (provides for exemplary damages for injury or death caused by intoxicated driver).

In Woods v. Mendez, 265 Va. 68, 574 S.E.2d 263 (2003), the Court noted the definition of "willful and wanton negligence" set forth in Harris v. Harman, 253 Va. 336, 340-41, 486 S.E.2d 99, 101 (1997), as "action undertaken in conscious disregard of another's rights, or with reckless indifference to consequences

4

with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another."  265 Va. at 76-77, 574 S.E.2d at 268. However, "the intentional violation of a traffic law, without more, will not support a finding of willful and wanton negligence."  Alfonso v. Robinson, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999).

On appeal, the plaintiffs contend the trial court did not err in deciding that a jury question was presented on the issue of punitive damages.  They argue that defendant's conduct in "leaving the scene under the circumstances of this case is alone grounds for an award of punitive damages."

Continuing, plaintiffs say that because defendant "knew the seriousness of" their injuries, "he enhanced their damages by virtue of his leaving," committing "felony hit-and-run with the intent to place his self interest above" their needs.  These actions, plaintiffs maintain, were "sufficient to permit the jury to find his conduct so willful and wanton as to show a conscious disregard of the plaintiffs' rights."  We do not agree.

An analysis of this Court's relevant cases on common law punitive damages will demonstrate that such damages are not recoverable here as a matter of law.

5

Parenthetically, we observe there is abundant law on this subject in the opinions of this Court.  Therefore, we do not need guidance from the cases of other jurisdictions relied upon by the plaintiffs.  Indeed, they urge upon us an unpublished decision of the United States Court of Appeals for the Fourth Circuit, Clark v. Torres, No. 90-3039, 1992 U.S. App. LEXIS 2736 (4th Cir. Feb. 27, 1992) (per curiam).  But the Fourth Circuit's Local Rule 36(c) provides, in part:  "Citation of this Court's unpublished dispositions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case."  If reliance on such a disposition is disfavored in the federal system, surely such reliance will not be favored in the state system.

In Baker v. Marcus, 201 Va. 905, 114 S.E.2d 617 (1960), this Court held that the trial court erred in submitting the question of punitive damages to the jury.  There, an intoxicated defendant caused a rear-end collision on a city street.

The Court reviewed the purpose of punitive damages: "Exemplary damages are something in addition to full compensation, and something not given as plaintiff's due, but for the protection of the public, as a punishment to defendant, and as a warning and example to deter him and others from committing like offenses."  Id. at 909, 114 S.E.2d at 620

6

(quoting Zedd v. Jenkins, 194 Va. 704, 707, 74 S.E.2d 791, 793 (1953)).

Further, in the general discussion of the subject, the Court said:  "Exemplary damages are allowable only where there is misconduct or malice, or such recklessness or negligence as evinces a conscious disregard of the rights of others.  But where the act or omission complained of is free from fraud, malice, oppression, or other special motives of aggravation, damages by way of punishment cannot be awarded, and compensatory damages only are permissible."  Id. at 909, 114 S.E.2d at 621 (quoting Wood v. Am. Nat. Bank, 100 Va. 306, 316, 40 S.E. 931, 934 (1902)).  Accord PGI, Inc. v. Rathe Prod. Inc., 265 Va. 334, 345, 576 S.E.2d 438, 444 (2003).

In Booth, the Court reversed a trial court's judgment in striking the plaintiff's evidence on the issue of punitive damages.  There, the defendant drove his motor vehicle after dark the wrong way down an exit ramp of an interstate highway; continued driving the wrong way on the highway; met and passed an approaching truck, the driver of which blew his air horns, blinked his lights, and took evasive action avoiding a collision; and continued at a high rate of speed until he collided head-on with a vehicle operated by the plaintiff.  The defendant had a blood alcohol content of 0.22% by weight by volume, exceeding the .10% reading then establishing a

7

presumption of intoxication.  236 Va. at 270-71, 374 S.E.2d at 3.

Building on Baker v. Marcus, the Court stated "that a conscious disregard of the rights of others" necessary to support punitive damages may be proved by objective facts.  "The objective fact that the defendant . . . voluntarily consumed enough intoxicants to produce a reading of 0.22% blood alcohol content, causing him to drive as he did on the night in question, provides sufficient proof of his conscious disregard of the rights of others."  Booth, 236 Va. at 273, 374 S.E.2d at 3.

Concluding, the Court stated:  "We do not intend by this decision to indicate a lessening of this Court's general reluctance to allow punitive damages in run-of-the-mill personal injury cases.  We merely hold that, upon the egregious set of facts presented in this case, the plaintiff is entitled to have a jury consider her claim of punitive damages."  Id.

In Hack v. Nester, 241 Va. 499, 404 S.E.2d 42 (1991), reversing part of a trial court's judgment, we held that the evidence failed to establish "the conscious disregard for [the plaintiff's] safety necessary to sustain an award of punitive damages."  241 Va. at 507, 404 S.E.2d at 45.  In that case, the defendant consumed most of a pitcher of beer shortly before the accident and had two prior drunk driving convictions.  He

8

operated a vehicle at night without a left headlight and while suffering from night blindness. His vehicle collided head-on with the plaintiff's vehicle on a curve while on the plaintiff's side of the highway.

In Puent v. Dickens, 245 Va. 217, 427 S.E.2d 340 (1993), the Court held the evidence was insufficient to permit an award of punitive damages. There, an intoxicated defendant rear-ended at night a stopped vehicle occupied by the plaintiff. We said that a jury could have found defendant was travelling "very fast" just prior to the collision, that there was no indication he applied his brakes before impact, and "that he attempted to leave the scene of the collision." 245 Va. at 220, 427 S.E.2d at 342. The Court stated: "[T]hese combined factors are insufficient to justify a finding of the wanton negligence necessary for an award of punitive damages." Id.

Finally, in Huffman v. Love, 245 Va. 311, 427 S.E.2d 357 (1993), the Court held the evidence was sufficient to create a jury issue on punitive damages. In that case, an intoxicated defendant drove his vehicle into an oncoming lane of traffic and sideswiped a car operated by the plaintiff. Defendant had caused an earlier collision, immediately prior to the accident in question, when he rear-ended another vehicle.

At the time of the accident sued upon, the defendant was driving 25 miles per hour in a 15 mile per hour zone. He failed

9

to stop at the scene, but continued to drive for three miles. When he was stopped, he could not talk, walk, or stand without assistance. His blood alcohol level was 0.32%. Prior to the incident, he had been convicted twice for drunk driving. 245 Va. at 313, 427 S.E.2d at 359. See Webb v. Rivers, 256 Va. 460, 507 S.E.2d 360 (1998) (jury issue presented on punitive damages when defendant drove through a red light at 90 m.p.h. in 25 m.p.h. speed zone with .21% blood alcohol level and was so drunk he did not know where he was or the time of night).

In the present case, considering defendant's conduct in its entirety, we hold that, like in Baker, Hack, and Puent, defendant's behavior was not so willful or wanton as to show a conscious disregard for the rights of others.

Clearly, the defendant's actions, involving violation of traffic laws and rules of the road, demonstrated a disregard of prudence to the level that the safety of others was completely neglected. But this conduct amounts to gross negligence, which shocks fair-minded people; it is less than willful recklessness. See Harris v. Harman, 253 Va. at 340, 486 S.E.2d at 101. The required "actual or constructive consciousness that injury will result from the act done or omitted," Alfonso, 257 Va. at 545, 514 S.E.2d at 618, is lacking in the proof.

At the most from the plaintiffs' standpoint, the defendant did not keep a proper lookout for vehicles nearly stopped ahead

of him, he did not keep his vehicle under proper control, he probably was intoxicated to some extent, and he feloniously left the scene of the accident in violation of Code § 46.2-894. There is no evidence that defendant exceeded the speed limit or a reasonable speed under the circumstances. He was driving on his proper side of the street, apparently operating a properly functioning vehicle. In sum, the defendant's behavior was not the "egregious" conduct spoken of in our cases.

The plaintiffs dwell on the contention that this is "a case of felony hit-and-run which increased the plaintiffs' damages." Continuing, they argue that "Mrs. Isascs was caused to be fearful and felt scared and abandoned, and both were greatly inconvenienced. The defendant intentionally disregarded the plaintiffs' rights to get the appropriate information from the defendant, to have a proper investigation of the accident, to have criminal and civil liabilities addressed under our rule of law, to receive timely medical care and assistance, and to avoid the annoyance and outrage any injured plaintiff would feel from the abandonment and flight of the defendant responsible for the accident and injury."

This contention overlooks the settled principle that punitive damages "are something in addition to full compensation, and something not given as plaintiff's due." Baker v. Marcus, 201 Va. at 909, 114 S.E.2d at 620. In other

11

words, punitive damages are allowed not so much as compensation for a plaintiff's loss as to warn others.  Id.  Indemnity for a plaintiff's losses is the function of compensatory, not punitive, damages.

Consequently, we conclude that the trial court erred in permitting recovery of punitive damages in these actions. Therefore, affirming the judgment below for compensatory damages, we will reverse that portion of the judgment which provides for recovery of punitive damages, and final judgment will be entered here for the defendant on that issue.

Reversed and final judgment.

SENIOR JUSTICE CARRICO, with whom Justice Lemons joins, dissenting.

I would affirm the award of punitive damages in this case. I acknowledge that punitive damages may be awarded only when conduct is so willful and wanton as to evince a conscious disregard of the rights of others.  This raises an interesting question:  Was John Doe unconscious when he fled the scene of the accident in this case?  To ask the question is to answer it; of course John Doe was not unconscious.

Rather, with full knowledge that his conduct had caused personal injury, John Doe deliberately and feloniously fled the scene without, as Code § 46.2-894 requires, rendering reasonable assistance to the person injured and providing his name,

12

address, driver's license number, and vehicle registration number forthwith to the driver of the vehicle he struck. Additionally, as the majority recites, John Doe told Mr. Isaacs that he would come back to Mrs. Isaacs and their automobile after he brought his own car back to the scene. Relying upon this representation, Mr. Isaacs went to find a telephone to summons emergency assistance. Contrary to his representation, John Doe did not return and he left an injured victim "abandoned and alone and scared" in the car at "the far side of the intersection in the middle."

If this is not conduct so willful and wanton as to evince a conscious disregard of the rights of others, it is difficult to discern what is. Indeed, I think leaving the scene of an accident involving personal injury without rendering assistance to the injured person, and doing the other things the law requires, is about as reprehensible as conduct on the highway can get, and it should not go unpunished. Yet, in this case, John Doe has subverted the criminal process by doing the very things the law prohibits – fleeing the scene, withholding information about his identity, and leaving no evidence of where he can be found. It is not only appropriate but also necessary, therefore, to invoke the civil process and impose punitive damages upon John Doe as punishment for his conduct and as a lesson to others to refrain from similar behavior. As this

13

Court said in Baker v. Marcus, 201 Va. 905, 114 S.E.2d 617

(1960):

> "Exemplary damages are something in addition to full
> compensation, and something not given as plaintiff's due,
> but for the protection of the public, as a punishment to
> defendant, and as a warning and example to deter him and
> others from committing like offenses."

Id. at 909, 114 S.E.2d at 620 (quoting Zedd v. Jenkins, 194 Va.

704, 707, 74 S.E.2d 791, 793 (1953)).

For these reasons, I respectfully dissent.